CV 13        6386

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

ISS ACTION, INC.,                          :

                  Plaintiff,        :        Case No.

     -against-                           :        **COMPLAINT**

TUTOR PERINI CORPORATION            :        ORENSTEIN, M.J.

              Defendant        :
------------------------------------------------------X

       ISS ACTION, INC., by its undersigned attorneys, for its Complaint herein states as follows:

## PARTIES

    1.    ISS Action, Inc. ("ISS") is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 158-12 Rockaway Boulevard, Suite 200, Queens, New York 11434.  ISS is a federally certified woman-owned small business.

    2.    Tutor Perini Corporation ("Tutor" or "Defendant") is a corporation organized and existing under the laws of the State of Massachusetts, having its principal place of business at 15901 Olden Street, Sylmar, California 91342.

    3.    Tutor was at all relevant times, and is at present, registered to do business in the state of New York.  Tutor is publicly traded on the New York Stock Exchange.

## JURISDICTION AND VENUE

    4.    The Court has jurisdiction over the subject matter of this action by reason of 28 U.S.C. §1332(a)(1) and (c) (1), as there is diversity of citizenship between the

1

parties within the meaning of the referenced statutes, and, as set forth more fully below, the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. The venue of this action is proper under 28 U.S.C §1391 (a)(2), by reason of the fact that a substantial part of the events or omissions giving rise to the claims herein sued upon took place in the County of Queens in the state of New York.

## ALLEGATIONS COMMON TO ALL COUNTS

6. Plaintiff repeats all of the allegations set forth above with the same force and effect as if fully recited here.

7. At all relevant times, Tutor was engaged in the business of performing construction work, which it did at various locations throughout the United States.

8. On or about June 25, 2009, Tutor entered into a contract with the Port Authority of New York and New Jersey, pursuant to which Tutor was to rehabilitate, refurbish and otherwise improve Runway 13R-31L at John F. Kennedy International Airport at Jamaica, New York ("the Runway Project").

9. At all relevant times, ISS was engaged in the business of providing security guard and related services, predominantly within the state of New York. ISS is licensed by the State of New York to provide such services.

10. On or about July 31, 2009, the parties entered into a written agreement, pursuant to which ISS agreed to provide security services to Tutor in support of the Runway Project, in accordance with certain staffing, payment and other particulars agreed to by the parties. A copy of the parties' agreement ("the Agreement") is annexed as Exhibit A.

2

11.    Pursuant to the Agreement, ISS was to submit invoices to Tutor weekly, and Tutor was obligated to pay ISS the invoiced amounts by check or wire transfer no later than fourteen days from receipt of such invoice.

12.    The Agreement specified the hourly rate to be paid for identified services, as well as the cost of other items, and thereafter stated, in relevant part: "All rates are subject to New York State Sales Tax."

13.    ISS commenced performance under the Agreement and submitted a first invoice to Tutor, which included a charge for applicable New York State Sales Tax.

14.    Soon after Tutor received and paid that first invoice, which, consistent with the Agreement, included a charge for sales tax, representatives of Tutor communicated with one or more representatives of ISS on the subject of sales tax due and owing for the services provided by ISS under the Agreement.

15.    More particularly, representatives of Tutor stated to ISS that the services which had been, and which were to be, provided to Tutor by ISS under the Agreement were, as a matter of fact and law, exempt from New York State and local sales and use taxes.

16.    More particularly, Tutor:

a)  informed ISS that it would provide ISS with a valid certificate of exemption from New York sales and use taxes;

3

Case 1:13-cv-06386-DLI-JO   Document 1   Filed 11/18/13   Page 4 of 15 PageID #: 4

b)  directed that ISS, upon receipt of such certificate, exclude sales tax charges from future invoices to be prepared in connection with services to be provided under the Agreement;  and

c)  directed ISS to refund, or otherwise credit, to Tutor the sales tax paid by Tutor in accordance with the first invoice.

17.    Tutor did in fact thereafter provide ISS with a completed and signed New York State Department of Taxation and Finance Form ST-120-1, titled:  "New York State and Local Sales and Use Tax Contractor Exempt Purchase Certificate", a copy of which is annexed hereto as Exhibit B.  That form is dated August 3, 2009, which was the first date on which ISS provided services to Tutor in connection with the Runway Project.

18.    The Certificate (Ex. B), at checked box 3A, provides that the services purchased from ISS are exempt from sales and use tax because the real property or structure being improved by Tutor was owned by an organization exempt under Section 1116(a) of the New York Tax Law.

19.    The certification section of Exhibit B, a document executed by Michael A. Busey, as Vice President Controller of Tutor, provides as follows:

> **Certification:**  I certify that the above statements are true and complete, and I make these statements with the knowledge that willfully issuing a false or fraudulent certificate, with the intent to evade tax, is a misdemeanor under section 1817(m) of the New York State tax law and Section 210.45 of the penal law, punishable by a fine of up to $10,000 for an individual or $20,000 for a corporation.  I also understand that the Tax Department is authorized to

4

investigate the validity of exemptions claimed or the accuracy of any information entered on this form.

20.     On the basis of the representations made to ISS by Tutor, both in the contents of the Certificate and otherwise, ISS complied with Tutor's request by:

a) not charging Tutor for sales tax on all subsequent invoices furnished to Tutor by ISS; and

b) giving Tutor a credit for the sales tax previously invoiced to, and paid by, Tutor.

21.     In or about February, 2010, Tutor presented ISS with a more formal contract relating to services provided by ISS in connection with the Runway Project. That contract contained a provision stating that ISS, as Subcontractor, was responsible for the payment of taxes contributions and premiums payable "on his employees or on his operations under worker's compensation laws, unemployment compensation laws, the Federal Social Security Act, health and welfare benefit plans, gross business taxes, sales and use taxes and any other taxes, contributions and/or premiums which may become payable by operation of law or contract. . . . "  In light of the representations made by Tutor, including the Certification provided, by which Tutor represented that the services being performed by ISS on the runway Project were exempt from sales and use taxes, ISS, in or about February, 2010, signed the contract prepared by Tutor containing the quoted text.

22.     ISS continued to perform services pursuant to the Agreement through the conclusion of the Runway Project, on or about November 1, 2011.

5

23.     In or about March, 2013 ISS received a letter from the New York State Department of Taxation and Finance ("the Department") which initiated an audit of ISS's finances and operations.  After a field visit by the Department's representative to ISS on May 30, 2013, the Department determined that:

a)     there was no basis in fact or law for any exemption from New York sales or use tax applicable to the services provided to Tutor by ISS on the Runway Project, contrary to the  representations made and certification provided by Tutor to ISS; and

b)     sales tax was due and owing to the State of New York by reason of the services provided by ISS to Tutor pursuant to the Agreement, in the approximate principal amount of $250,000, together with interest, in an amount which as of August 6, 2013 had accrued to $32,000, and has continued to accrue thereafter.

24.     The Department has reserved its right to seek penalties from ISS in connection with its claim for unpaid sales taxes.

25.     Upon the determination made by the New York State Department of Taxation and Finance, upon audit, that such sums were due and owing, ISS duly demanded that Tutor satisfy its liability for sales tax as determined by the State of New York.

26.     Notwithstanding the foregoing, Tutor has to date failed and refused to pay the sums demanded or any portion thereof.

6

27.     The New York State Department of Taxation and Finance has informed ISS of the Department's intention to pursue collection from ISS of said sum, together with all statutory interest accruing through the date of full payment of the outstanding principal.

## COUNT I

28.     Plaintiff repeats all of the allegations set forth above with the same force and effect as if fully recited here.

29.     By reason of the foregoing there exists a justiciable case and controversy as to the responsibility of Defendant to pay New York sales taxes due and owing by reason of the services provided to Defendant by ISS on the runway Project.

## COUNT II

30.     Plaintiff repeats all of the allegations set forth above with the same force and effect as if fully recited here.

31.     By reason of the foregoing, Defendant is in breach of its contractual obligations to pay all sales tax due and owning by reason of services provided to it by ISS pursuant to the Agreement, and ISS in entitled to a money judgment in an amount to be finally calculated at the time of judgment, but currently known to exceed $280,000.

## COUNT III

32.     Plaintiff repeats all of the allegations set forth above with the same force and effect as if fully recited here.

33.     By reason of the foregoing, Defendant has been unjustly enriched by obtaining goods and services under the Agreement for an amount less than the Agreement obligated Defendant to pay, and in an amount otherwise which is otherwise less than fair, and ISS is entitled to a money judgment in the amount ISS is required to pay to the state of New York in satisfaction of all sales tax obligations arising from the performance of the Agreement by ISS.

**COUNT IV**

34.     Plaintiff repeats all of the allegations set forth above with the same force and effect as if fully recited here.

35.     To the extent that it is found that ISS is bound by the terms of the subcontract it signed in or about February, 2010 as respects the payment of sales taxes, Tutor is liable to ISS by reason of its negligent or fraudulent misrepresentations made to ISS, including in the Certification provided by Tutor to ISS, as to exemption from sales tax liability.   The statements made by Tutor to ISS as to exemption from sales tax liability were false, were negligently or fraudulently made to ISS for the purpose of inducing ISS to execute the subcontract in the form written, and ISS reasonably relied on the misrepresentations to its financial detriment.

36.     More particularly, ISS reasonably relied on the representations made by Tutor as to exemption from sales tax, as the representation was made under penalty of a misdemeanor conviction and the imposition of a fine.

8

37.    By reason of the foregoing, Tutor is liable to ISS for money damages on the basis of negligent or fraudulent misrepresentation, the amount of which are to be determined at trial, but which include: a) the full amount of principal, interest, and penalty, if imposed, necessary to satisfy the claim of the State of New York for unpaid sales taxes arising from ISS' performance of the Agreement; b) all costs, expenses and attorneys' fees reasonably incurred by ISS in connection with its dealings with the state of New York relating to the unpaid sales taxes which are the subject of this action; and c) an award of treble damages based on Tutor's fraudulent conduct.

WHEREFORE, ISS Action, Inc. demands a judgment as follows:

a)    on Count I, for a declaration that Defendant is legally obligated to the State of New York for payment of all sales taxes, including interest and any penalties, if any, thereon resulting from the provision of services by ISS to Defendant on the Runway Project;

b)    on Count II, for a sum of money in the amount ISS is required to pay to the State of New York in satisfaction of all sales tax obligations arising from the performance of the Agreement by ISS.

c)    on Count III, for a sum of money in the amount ISS is required to pay to the State of New York in satisfaction of all sales tax obligations arising from the performance of the Agreement by ISS.

c)    on Count IV, for a sum of money in an amount to be determined at trial, but which includes: the full amount of principal, interest, and penalty, if imposed, necessary to be paid by ISS to satisfy the claim of the State of New York for all unpaid

9

sales taxes arising from ISS' performance of the Agreement; all costs, expenses and attorneys' fees reasonably incurred by ISS in connection with its dealings with the State of New York relating to the unpaid sales taxes which are the subject of this action; and an award of treble damages based on Tutor's fraudulent conduct.

together with such other and further relief as to the Court may seem just and proper, including the costs and disbursements of this action.

Dated:  November 18, 2013                    COTI & SUGRUE

By _____
     Stephen R. Sugrue  SS-0614
     59 Grove Street Suite 1F
     New Canaan, CT 06840
     203-966-5817
     203-966-6385 (fax)
     ssugrue@optimum.net

EXHIBIT A

An Agreement dated July 31, 2009 between ISS Action, Inc. a New York corporation with an office at JFK Airport, Building 151, Suite 310A, Jamaica, NY 11430 ("ISS") and Perini Corporation a Massachusetts corporation with an office at 1022 Lower South Street, Peekskill, NY 10566 ("Perini.")

WHEREAS, ISS is engaged in the business of providing security services and this business is licensed by the New York State Department of State, Division of Licensing Services, and

WHEREAS, Perini desires that ISS provide it with security services, all upon the terms and conditions hereinafter set forth as well as a final contract;

ISS will provide Perini with security services in accordance with the required staffing levels as set by the Port Authority of NY & NJ for the JFK 1020- Bay Runway Project. The services are to be provided primarily at JFK International Airport, Jamaica, NY 11430.

This Agreement will commence, July 31, 2009 and continue ~~there from for a period of~~ ~~two years.~~ *UNTIL PROJECT COMPLETION*

ISS Action will invoice Perini weekly and Perini will compensate ISS Action via check or money wire transfer no later than 14 days from receipt of the ISS Statement.

The agreed upon rates are as follows:

Each Level One Security Officer @ $ 24.58 per hour.
Each Level Two Security Supervisor @ $ 27.93 per hour.
Each 7 seater vehicle @ $ 1,750 per month.
Each Supervisor truck @ $ 1,450 per month.
Each radio $ 950.00

*# RATES TO BE AS LISTED IN FORMAL PROPOSAL RECEIVED PRIOR TO 05/28/09*

All rates are subject to New York State Sales Tax. Ten legal holidays will be billed at time and one half. All rates are for eight hour days and 40 hour weeks. Any time required above eight hours in a given day or 40 hours in a given week will be billed at the rate of time and one half. Additional emergency coverage (less than 24 hours notice) will be *~~billed at time and one half.~~ TO BE AS NEGOTIATED AS PER FINAL AGREEMENT*

The parties agree that as soon as they are able they will execute a completed contract subject to Perini Corporation's terms and conditions.

Pamela Newman
CEO
ISS Action, Inc.

Damon Petrillo
Project Manager
Perini Corporation

*# SUBJECT TO PRIOR PERINI TERMS & CONDITIONS*

EXHIBIT B

# TUTOR PERINI



New York State
Department of
Taxation and Finance

**ST-120.1**
(4/06)

## New York State and Local Sales and Use Tax
# Contractor Exempt Purchase Certificate

To be used **only** by contractors who are registered with the Tax Department for sales tax purposes.

**To vendors:**
You must collect tax on any sale of taxable property or services unless the contractor gives you a properly completed exempt purchase certificate not later than 90 days after the property is sold or service is rendered. In addition, you must keep the certificate for at least three years, as explained in the instructions.

**To contractors and vendors:** read the instructions on pages 3 and 4 carefully before completing or accepting this certificate.

| Name of vendor | Name of purchasing contractor |
|---|---|
| ISS Action Security | Perini Corporation (Tutor Perini Corp.) |

| Street address | Street address |
|---|---|
| JFK Airport, Building 151, Suite 310A | 1022 Lower South Street |

| City | State | ZIP code | City | State | ZIP code |
|---|---|---|---|---|---|
| Jamaica | NY | 11430 | Peekskill | NY | 10566 |

1.  I have been issued a New York State *Certificate of Authority*, _____, to collect
    (enter your sales tax vendor identification number)
    New York State and local sales and use tax, and that certificate has not expired or been suspended or revoked.

2.  The tangible personal property or service being purchased will be used on the following project:

    JFK Runway 13L-13R _____

    located at  JFK Airport _____

    for and with  Port Authority of New York & New Jersey _____

    pursuant to prime contract dated  06/25/2009 _____.

3.  These purchases are exempt from sales and use tax because:
    *(Mark an X in the appropriate box; for further explanation, see items A through P in the instructions on pages 3 and 4.)*

    ☒ **A.** The tangible personal property will be used in the above project to create a building or structure or to improve real property or to maintain, service, or repair a building, structure, or real property, owned by an organization exempt under section 1116(a) of the Tax Law. (*For example, New York State government entities, United States governmental entities, United Nations and any international organization of which the United States is a member, certain posts or organizations of past or present members of the armed forces, and certain nonprofit organizations and Indian nations or tribes that have received New York State sales tax exempt organization status*). The tangible personal property will become an integral component part of such building, structure, or real property.

    ☐ **B.** The tangible personal property is production machinery and equipment, and it will be incorporated into real property.

    ☐ **C.** The tangible personal property will be used:
    - in an Internet data center; or
    - directly and predominantly in connection with telecommunications services for sale or Internet access services for sale; or
    - directly and predominantly by a television or radio broadcaster in connection with producing or transmitting live or recorded programs.

    ☐ **D.** The tangible personal property, including production machinery and equipment, is for installation in the above project and will remain tangible personal property after installation.

    ☐ **E.** The tangible personal property will be used predominantly either in farm production or in a commercial horse boarding operation, or in both.

    ☐ **F.** The machinery or equipment will be used directly and predominantly to control, prevent, or abate pollution or contaminants from manufacturing or industrial facilities.

    **Note: This certificate is not valid unless the purchaser completes the certification on page 2.**

Page 2 of 4   ST-120.1 (4/06)

☐ **G.** The tangible personal property will be used to erect, add to, improve, repair, maintain, or service a building, structure, or real property owned by a qualified empire zone enterprise (QEZE), and will become an integral component part of such building, structure, or real property. (Note: Item G purchases are exempt from the 4% New York State tax rate and from the ⅜% Metropolitan Commuter Transportation District (MCTD) rate. Item G purchases may be exempt from local taxes. See instructions.)

☐ **H.** The tangible personal property is residential solar energy systems equipment. (Note: Item H purchases are exempt from the 4% New York State tax rate and from the ⅜% MCTD rate. Item H purchases may be exempt from local taxes. See instructions.)

☐ **I.** The tangible personal property will be used directly and exclusively in adding to, altering, or improving a qualifying tenant's leased premises for use as commercial office space in Eligible Area A or B as described in TSB-M-05(12)S, *Tangible Personal Property Purchased for Leased Commercial Office Space in Lower Manhattan,* provided that the tangible personal property becomes an integral component part of the building in which the leased premises are located, and where such property is purchased during the first year of the qualifying tenant's lease and delivered to the leased premises no later than 90 days after the end of that first year.

☐ **J.** The tangible personal property is machinery or equipment used directly and predominantly in loading, unloading, and handling cargo at a qualified marine terminal facility in New York City. This exemption does **not** apply to the 4% local tax in New York City.

☐ **K.** The services are for the project described in line 2 on page 1 and will be resold. (This includes trash removal services in connection with repair services to real property.)

☐ **L.** The trash removal service being performed for the project described is in connection with a capital improvement to the real property of an organization exempt under section 1116(a) of the Tax Law.

☐ **M.** The services are to install, maintain, service, or repair tangible personal property used in an Internet data center, for telecommunication or Internet access services, or for radio or television broadcast production or transmission.

☐ **N.** The services are to install, maintain, service, or repair tangible personal property that will be used predominantly either in farm production or in a commercial horse boarding operation, or in both.

☐ **O.** The services are to install residential solar energy systems equipment.

☐ **P.** The services are to install tangible personal property purchased during the first year of the qualifying tenant's lease and delivered to the leased premises no later than 90 days after the end of that first year, that will be used directly and exclusively in adding to, altering, or improving a qualifying tenant's leased premises for use as commercial office space in Eligible Area A or B as described in TSB-M-05(12)S, *Tangible Personal Property Purchased for Leased Commercial Office Space in Lower Manhattan.*

**Caution:** Contractors may **not** use this certificate to purchase services exempt unless the services are resold to customers in connection with a project. Construction equipment, tools, and supplies purchased or rented for use in completing a project but that do not become part of the finished project may not be purchased exempt from tax through the use of this certificate.

**Certification:** I certify that the above statements are true and complete, and I make these statements with the knowledge that willfully issuing a false or fraudulent certificate, with the intent to evade tax, is a misdemeanor under section 1817(m) of the New York State Tax Law and Section 210.45 of the Penal Law, punishable by a fine of up to $10,000 for an individual or $20,000 for a corporation. I also understand that the Tax Department is authorized to investigate the validity of exemptions claimed or the accuracy of any information entered on this form.

| Type or print name and title of owner, partner, etc., of purchasing contractor | |
|---|---|
| Michael A. Busey - V.P. Controller | |
| Signature of owner, partner, etc. | Date prepared 8/3/09 |

**Substantial penalties will result from misuse of this certificate.**